UNITED STATES of America,
·Plaintiff-Appellee,

v.

Carl Douglas MARTIN, Defendant-Appellant.

No. 73–2166.

United States Court of Appeals,
·Ninth Circuit.

Dec. 17, 1973.

Federal Defenders of San Diego, Inc., Robert L. Boles, San Diego, Cal., for defendant-appellant.

William V. Smitherman, U. S. Atty., Michael B. Scott, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before ALDRICH,* ELY and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Martin was convicted by a jury of illegally possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1970). We affirm.

Martin was arrested after the police, conducting a surveillance of his motel room, observed a car pull up to the motel, the driver enter Martin's room carrying a brown paper sack, and, short-

---

* The Honorable Bailey Aldrich, Senior United States Circuit Judge for the First Circuit, sitting by designation.

ly after, both leave with Martin then apparently carrying the paper bag. A search of the car revealed a quantity of heroin under the front seat and more heroin concealed in a brown paper bag underneath the back seat. The driver of the car, Albertico Salazar, was eventually indicted along with appellant. Charges against Salazar were later dropped, however, in return for his testimony at trial—testimony which indicated a narcotics transaction had taken place between Martin and Salazar. A third occupant of the car, a young Mexican alien, was released after it was determined that he was not involved in the transaction. Upon his release the boy apparently returned to Mexico.

### Attempted Coverup

■ At trial Salazar, through an interpreter, related that appellant had told him that he should "take the blame on this charge because he (appellant) was hot, and he was on parole". Appellant argues that this is inferentially evidence of his past crimes which is inadmissible as part of the government's case in chief. It is true that normally the prosecution may not initially attack a defendant's character. *See* 1 Wigmore, Evidence § 57 (3d ed. 1940). However, reputation evidence, including evidence of past crimes, is admissible, as an exception to this rule, where "the evidence has probative force relevant to intent or motive, design, knowledge, identity, or habits. . . ." Smith v. Rhay, 419 F.2d 160, 164 (9th Cir. 1969). *See generally* 2 Wigmore, Evidence §§ 276, 278 (3d ed. 1940). For example, in Hass v. United States, 31 F.2d 13 (9th Cir.), cert. denied, 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003 (1929), a witness testified that the defendant, who was charged with possession of opium, had attempted to assault him shortly before the trial. The testimony was held admissible "because it had some tendency to connect the appellant with the commission of the offense. . . ." Hass v. United States, 31 F.2d at 15. Similarly, here the statement as to appellant's attempt-

ed coverup, and the reasons for it, are an acknowledgement of guilt. The statement that he was "hot" and on parole, while not itself a declaration of the coverup scheme, indicates why Martin was asking Salazar to take the blame and is thus part and parcel of the incriminating statement.

■ Martin argues that Salazar's testimony on this point is hearsay since the alleged admission was related to Salazar by a fellow prisoner who acted as an interpreter. Viewing the evidence, as we must, in a light most favorable to the government, *see* Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it appears that Salazar was capable of understanding enough English to gather the purport of Martin's statement. It was not hearsay because another inmate also translated it.

### Release of Passenger

Prior to the trial, Martin moved for an order requiring the goverment to disclose the name of the third occupant of the car, the Mexican boy. A customs agent, James Miller, the only person to testify at the hearing on this motion, said that he was unable to recall or discover the boy's name. Based on this, the court denied the motion. Martin contends that the failure of the government to at least record the witness' name is a denial of due process.

■ While it might be a denial of due process for the government to fail to record the identity of an important witness where there are no other means available to learn that person's identity, *cf.* United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971), this is not such a case. At the close of the pretrial hearing, the judge suggested that Martin's counsel attempt to learn the boy's identity from Salazar or his attorney. At trial, both Salazar and a local police officer testified as to the missing passenger's name. Martin's counsel did not request time to bring the boy to testify, presumably having learned the boy's identity and then having discover-

ed his testimony would be of no help. In light of this, it cannot be said the government's failure was a denial of due process.

## Assistance of Counsel

■ Martin next claims that he was denied effective assistance of counsel. To establish such a claim, a party must demonstrate that counsel's conduct of his case was so lacking in professional skill as to reduce the trial to a farce or a mockery of justice. *See, e. g.*, United States v. Valenzuela-Mendoza, 452 F.2d 773, 774 (9th Cir. 1971). Appellant points to three instances of alleged misjudgment which, it is said, prove trial counsel's total lack of diligence in this case.

■ First, Martin complains of his counsel's withdrawal of a motion to suppress the heroin seized in the search of Salazar's automobile. This, however, falls far short of constituting ineffective assistance of counsel: it was a reasonable decision in the face of the fact that, as counsel admitted, there was almost certainly probable cause to search the vehicle without a warrant.

■ Second, Martin asserts that counsel was remiss in failing to object to certain of the trial court's instructions regarding the criminal standard of proof. The court's instructions con-

tained two statements which have been disapproved in this circuit.[1] Yet in both cases in which such statements were criticized, this court found their inclusion was not reversible error under the circumstances because the instructions as a whole conveyed a proper notion of the standard of guilt. *See* United States v. Clay, 476 F.2d 1211, 1215 (9th Cir. 1973); United States v. Cummings, 468 F.2d 274, 280 (9th Cir. 1972). The same is true of the instructions here. Therefore, trial counsel's failure to object does not demonstrate the sort of incompetency necessary for reversal.

■ Third, Martin points to the failure of his attorney to offer a special cautionary instruction on the reliability of the accomplice, Salazar.[2] However, the issue of Salazar's credibility was pursued in a number of ways; counsel attacked his credibility on cross examination; the testimony of a fellow inmate, called as a witness for Martin, tended to undercut Salazar's version of events; and in final argument counsel strenuously argued that the accomplice's testimony was suspect. Since appellant's attorney actively pursued the reliability issue, we cannot say the failure to offer the cautionary instruction represents—even in combination with the other claimed misjudgments—such malfeasance that appellant was denied effective assistance of counsel.[3] *Compare* Bru-

1. The trial court instructed the jury:
 Whenever, after careful consideration of all the evidence, your minds are in that state where a conclusion of innocence is indicated equally with a conclusion of guilt, or there is a reasonable doubt as to whether the evidence is so balanced, a conclusion of innocence must be adopted.
 This instruction was criticized in United States v. Clay, 476 F.2d 1211, 1215 (9th Cir. 1973), a case decided only ten days before the trial in this case. Later the judge instructed the jurors that: "If the accused be proved guilty, say so. If not proved guilty, say so." This statement was disapproved in United States v. Cummings, 468 F.2d 274, 281 (9th Cir. 1972).

2. Such an instruction must be given when requested by defense counsel, at least where the testimony of an accomplice is substan-

tially uncorroborated. *See, e. g.*, United States v. Davis, 439 F.2d 1105, 1106–1107 (9th Cir. 1971).

3. Nor was it error for the trial court not to give the cautionary instruction *sua sponte*. The trial judge's failure must be plain error for this court to reverse in the absence of an offer by counsel. F.R.Crim.P. 52(b); United States v. Marsh, 451 F.2d 219, 221 (9th Cir. 1971) (dicta). Plain error will be found only where there is a strong need for the instruction: for example, where the accomplice's testimony is almost entirely uncorroborated and it is, as well, both critical and suspect. *See* United States v. Griffin, 382 F.2d 823, 828–829 (6th Cir. 1967). Here Salazar's testimony was supported by other evidence: (1) two separate tips were received concerning the room in which Martin was staying; (2) a paper sack, the same

baker v. Dickson, 310 F.2d 30, 38–39 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963) (total failure to present critical defense amounts to denial of counsel).

### Stipulation of Facts

 Finally, the government and Martin's attorney agreed to stipulate as to the substance found in the car and as to its chain of custody. Appellant argues that the record must affirmatively reveal, as it does not, that he personally waived his constitutional right to confront witnesses by consenting to the stipulation. This is not an area where counsel is not permitted to waive his client's rights. See, e. g., Wilson v. Gray, 345 F.2d 282, 286 (9th Cir.), cert. denied, 382 U.S. 919, 86 S.Ct. 288, 15 L. Ed.2d 234 (1965). We consider the matter one of degree, based perhaps upon the importance of the testimony and the likelihood of overcoming it if presented in court. It might well have been advantageous trial tactics not to dispute the indisputable. In any case the agreement was recited in open court while the appellant was present. If he had reservations about the stipulation, he could have made them known at that time. See Poole v. Fitzharris, 396 F.2d 544, 546 (9th Cir. 1968). This contention is totally without merit.

Affirmed.

ELY, Circuit Judge (concurring):

I concur in the result. At the same time, I note that I am somewhat mystified over the trial court's failure to instruct the jury to the effect that the testimony of an accomplice should be viewed with caution. All jurists recognize that this is true, especially when there appears the likelihood that an accomplice presenting testimony favorable to the prosecution is likely to obtain some benefits in exchange therefor. It is true that the defense counsel made no request that the instruction be given, and Martin, in attacking his conviction collaterally, may be able to establish that, by reason of his defense attorney's dereliction in that respect, along with other circumstances, he did not receive that effective assistance of counsel to which he was entitled. Certainly it is inconceivable that there was any valid "strategic" reason which might have justified the defense attorney's failure to request an instruction of such importance to his client in this case. If I could act alone, I would hold that the court should have, acting sua sponte, given the instruction, and that its failure to do so constitutes plain reversible error. This, apparently, is the rule of the Tenth Circuit. See United States v. Owens, 460 F.2d 268, at 269 (10th Cir. 1972); see also Williamson v. United States, 332 F.2d 123 (5th Cir. 1964); cf. United States v. House, 471 F.2d 886 (1st Cir. 1973). And see the carefully researched opinion of Judge Coffin in McMillen v. United States, 386 F.2d 29, 30–36 (1st Cir. 1967).

Our court, however, has held that, absent the request of defense counsel, the court's failure to give the cautionary instruction is not plain error unless "the need for the instruction is sufficiently clear. . . ." United States v. Marsh, 451 F.2d 219, at 221 (9th Cir. 1971). Applying, as I must, that qualified rule, I cannot bring myself to the conclusion that the judgment here challenged should be reversed.

---

type of container in which some of the heroin was found, was observed first in Salazar's hands and then being carried by Martin; (3) Martin was registered in the motel under an assumed name; (4) the fact he left in a car with a stranger barely able to understand English went largely unexplained; and (5) Martin's alibi was strongly controverted. Because of this, see United States v. Busby, 484 F.2d 994, 997 (9th Cir. 1973), and the fact counsel raised the issue of credibility at trial, see United States v. Ketola, 478 F.2d 64, 66 (9th Cir. 1973), there was no plain error.